**644**

UNITED STATES, Appellee,

v.

Captain David L. WILLIAMS,
520–56–2582, United States
Army, Appellant.

ACMR 8700034.

U.S. Army Court of Military Review.

24 May 1988.

For Appellant: Stephen G. Milliken, Esquire (argued), Lieutenant Colonel Joel D. Miller, JAGC, Major Stewart C. Hudson, JAGC, Captain Joseph Tauber, JAGC, Captain Jeffrey J. Fleming, JAGC (on brief).

For Appellee: Captain Cynthia M. Brandon, JAGC (argued), Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Byron J. Braun, JAGC (on brief).

Before FELDER, GILLEY, and ROBBLEE, Appellate Military Judges.

## OPINION OF THE COURT

GILLEY, Judge:

Pursuant to his pleas, the appellant was found guilty of committing indecent acts upon a thirteen-year old female by fondling her thigh and breasts, in violation of Article 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 934 (1982). He was sentenced by the members of a general court-martial to dismissal, confinement for five years, and forfeiture of $400.00 pay per month for six months. The convening authority approved the sentence, but reduced the period of confinement to three years.

## I

The appellant contends, through counsel and personally, that his motion for a mistrial "at the accused's mid-trial change of plea" should have been granted. During an opening statement, the trial defense counsel said that the issue was one of credibility and that the victim's allegations were a "lie ... [now] totally out of control." As the trial proceeded, evidence corroborating the allegation was introduced. Then, appellant's fourteen-year old son testified for the government that the allegation was a fabrication tied to his ending a romantic relationship with the victim. Following his testimony, the appellant's son was recalled as a witness, and recanted his earlier testimony. The second time, he testified that he had seen his father "on top of Christy, who was yelling." He told his father "to stop and get off." Then the victim testified, describing the alleged indecent acts. At the end of her testimony on direct examination, appellant moved for a mistrial. When the motion was denied, the appellant changed his plea to guilty, substituting "thigh" for "vagina" as the area allegedly fondled. The government did not proceed with any further proof, and the

military judge made findings of guilty based upon the guilty plea. The court-martial members then sentenced him.

Mistrials are appropriate when "manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." "[T]he power to grant a mistrial should be used with great caution, under urgent circumstances for *plain and obvious reasons.*" (Emphasis added.) Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial [hereinafter M.C.M., 1984 and R.C.M., respectively] 915(a) and discussion. Examples of when to grant a mistrial include occasions when inadmissible matter was presented or prejudicial misconduct has occurred. At other times a mistrial is appropriate, even without misconduct by anyone, if something occurs which could "cast substantial doubt on the fairness of the proceedings." R.C.M. 915(a). The determination of whether to grant a mistrial rests in the discretion of military judge, subject to reversal for clear abuse of that discretion. *United States v. Jeanbaptiste,* 5 M.J. 374, 376 (C.M.A.1978).

■ We do not have a substantial doubt about the fairness of the proceedings in this case, though the same members who observed appellant's son recant his perjured testimony and the victim testify that the offense occurred as alleged in its more aggravated form, sentenced him after the change of the plea. Furthermore, neither the evidence presented during presentencing that the appellant lied to his supervisor about his guilt and at the Article 32 hearing,[1] nor the trial counsel's sentencing argument that appellant "forced children to lie and to be called liars" persuade us that a mistrial was appropriate.[2] The motion for mistrial did not come until after the

victim had testified. What occurred here, albeit in a manner unlikely to benefit the appellant, was that his original tactical approach to the trial did not succeed. The government's case turned out to be stronger than he thought, hardly the basis to conclude that a mistrial was appropriate, or, in particular, that the military judge abused his discretion in not granting a mistrial. *See* R.C.M. 915(a); *United States v. Waldron,* 36 C.M.R. 126, 131 (C.M.A.1966); *United States v. Rebuck,* 16 M.J. 555, 556 (A.F.C.M.R.1983). Moreover, appellant received the benefit of a less aggravated finding and avoided the problem of whether to testify in his defense. We also find that the sentence proceedings were fundamentally fair. We would reach the same conclusion, even had appellant renewed his motion for mistrial after the change of plea. The approved sentence was appropriate for this offense and the occurrences at trial do not warrant a rehearing in the interests of justice.

## II

■ Appellant also contends that the military judge erred by admitting as rebuttal evidence during sentencing, the following message from the Criminal Investigation Command (CID):

A records check of indiv, based on identifiers prov by your ofc, revealed the fol info:

Williams, David Larry—subj committed offense of [indecent assault on an adult female], listed in file 74–CID ... DTD 20 Dec 74. Icdt occurred btn 7–18 Dec 74 at FT BRAGG NC. DSPO: Admin counselled by unit cmdr ltr of repri[mand].[3]

We find that part of the message was properly admitted as rebuttal evidence to show that the appellant's commander had reprimanded him, by letter, for indecent

---

**1.** *See United States v. Nelson,* 1 M.J. 235, 237 (C.M.A.1975) (comment permitted on Article 32 testimony of the accused).

**2.** The trial defense counsel did not object to the arguments and thereby waived any error. R.C.M. 1001(g) (failure to object constitutes waiver).

**3.** A CID agent testified that a code in the message described the offense of indecent assault upon an adult woman, and that this message was received in response to a regular CID field practice of inquiring whether a suspect had been previously "titled" as having committed an offense.

assault. *See* R.C.M. 1001(c)(2)(C), (c)(3), and (d).

To place this matter in context, during the presentencing hearing, appellant submitted superb evaluation reports for periods from January 1975 until the time of his court-martial, records of successful military schooling in 1970 and 1974, and personnel qualification records. These records include the appellant's receipt of three good conduct medals, for three-year periods culminating in 1973, 1976, and 1979. More significantly, however, the following colloquy occurred between the trial defense counsel and the appellant during his unsworn statement to the court members:

Q. Well, why did you do this?

A. I just lost control. I've always managed to keep very tight control over myself, as much as possible. I do have— have had problems finding single women to date in the Zweibruecken area. It's not a place that's conducive to any sort of a relationship. I had a good friend who had gone back to school who I used to spend a great deal of time with. And when she was gone, there was really nobody to—in my own age group, that could fill the void, fill the emptiness.

Following the defense presentation, the trial counsel moved to admit the message. The defense counsel objected, asserting (1) that appellant only addressed the charged offense, and thus the message was not rebuttal,[4] and (2) the subject matter of the message was twelve years old, indicating that its prejudicial effect outweighed its probative value, and was thus inadmissible under R.C.M. 403(b). The military judge properly admitted, under R.C.M. 1001(c) and (d) and 403, the part of the message describing the reprimand.

Rule for Courts–Martial 1001(c)(2)(C) provides that the prosecution "may rebut any statements of facts" in an accused's unsworn statement during the presentencing proceeding. We agree with the military judge's assessment that appellant "opened the door" to this rebuttal material by putting forth that the charged offense was his first sexual crime. Certainly, that is a reasonable inference "which must be drawn from it." *United States v. Strong,* 17 M.J. 263, 266–67 (C.M.A.1984) (defense must accept responsibility for such inferences). *See also United States v. Mansel,* 12 M.J. 641, 643 (A.F.C.M.R.1981).[5] We view the entirety of appellant's presentence evidence and unsworn statement to convey that he had been an upstanding soldier who is a first-time sexual offender. The CID message rebutted that defense-created picture. Furthermore, the message also contradicted a factual assertion by appellant, that he had "always managed to keep tight control over [himself], as much as possible."

■ The military judge properly admitted so much of the message that stated the commander issued a letter of reprimand for indecent assault. *See* M.C.M., 1984, Military Rules of Evidence [hereinafter Mil.R. Evid.] 803(6) (records of regularly conducted activity admissible as exception to the rule excluding hearsay). This type of message is routinely used to describe previously substantiated investigations of those newly investigated, and describes as a fact the commander's disposition of that report.[6] Further, the commander's conclusion that misconduct occurred, as expressed in the form of a letter of reprimand, was admissible. *See* Mil.R.Evid. 803(6) (opinion contained in service records admissible); *United States v. Vandelin-*

---

**4.** During an Article 39(a) session, the reprimand described in the message had been the subject of a motion *in limine.* The military judge ruled that the information was not admissible unless it was impeachment proper to a character trait in issue or was rebuttal.

**5.** Rebuttal under the Manual for Courts–Martial, United States, *1969* (Revised edition) [hereinafter M.C.M., 1969], para. 75*d*, could include correction of the picture created by the entirety

of the defense presentation that the accused had been an exemplary soldier, of outstanding military character. *United States v. Strong,* 17 M.J. at 266–67. The drafters of R.C.M. 1001(c)(2)(C) did not indicate a change in the scope of the rule.

**6.** Army Regulation 190–45, Military Police Records and Forms—Military Justice, Chapters 3 and 4 (1977), governs the preparation of military police reports.

*der*, 20 M.J. 41, 46 (C.M.A.1985) (enlisted evaluation reports admissible under Mil.R. Evid. 803(6)). We consider a commander's letter of reprimand, even if not filed in personnel records, to have sufficient indicia of reliability to be an "opinion" acceptable under Mil.R.Evid. 803(6).[7]

 However, the conclusion of the CID report itself, expressing the opinion that the appellant committed an indecent assault, was not admissible. Military Rule of Evidence 803(8)(B) excludes from admission public records and reports that set forth "matters observed by police officers and other personnel acting in a law enforcement capacity." *United States v. Broadnax*, 23 M.J. 389, 391 (C.M.A.1987); *see United States v. Yeaman*, 22 M.J. 762, 765 (N.M.C.M.R.1986) (police report identifying service member as a suspect inadmissible because it clearly constituted a subjective determination made by the investigator based on his evaluation of the evidence obtained). We find no prejudice, however, from the failure to redact the CID message to show only the commander's reprimand.[8] Common military experience places in perspective the police report as a preliminary opinion that was superseded by the judgment of a commander that misconduct occurred.[9] *Cf. United States v. Yeaman*, 22 M.J. at 766 (erroneous admission into evidence of police opinion that appellant was a suspect did not require

remedial judicial action because of other evidence corroborating appellant's confession).[10] In addition, the military judge did instruct the court members that they must give "due consideration to all matters in mitigation and extenuation, as well as those in aggravation. However, you must bear in mind that the accused is to be sentenced only for the offense of which he had been found guilty." *See United States v. Boles*, 11 M.J. 195, 201 (C.M.A. 1981) (military judge should provide instruction on permissible use of evidence regarding an appropriate sentence). In this case, the use of the evidence as rebuttal, the weight of the commander's conclusion as distinguished from police opinion, and the instruction stated above dispel any prejudice from not excluding the CID's preparatory opinion, even though the instruction did not specifically address its applicability to the CID message.

 The military judge had the responsibility not only to determine whether appellant "opened the door" to this use of rebuttal evidence, but to exercise wide discretion to determine whether the probative value of this evidence outweighed the "danger of unfair prejudice" in the context of assessing an appropriate sentence. *See* Mil.R. Evid. 403. The probative value of the admissible part of the CID message, stating the fact that the appellant's commander reprimanded him for indecent assault of an

---

7. The M.C.M., 1969, para. 128c, described administrative reprimands as a nonpunitive measure a commander should use to further the efficiency of his command.

8. Such a redaction could have stated: "Unit cmdr provided admin counselling by ltr repri[mand] for indecent assault on an adult female 7–18 Dec 74 at FT BRAGG NC."

9. We find the commander was acting more as a magistrate than police officer in reaching conclusions about the CID report. Accordingly, his "opinion" was not the type opinion of guilt precluded by Mil.R.Evid. 803(8)(B) from admissibility. *Cf. United States v. Broadnax*, 23 M.J. at 393 (trustworthiness of opinions the thrust of restriction in Mil.R.Evid. 803(8)(B)).

10. The military judge based admission of the CID message in part on viewing it as a "personnel record" of the appellant. However, there

was no evidence that it was so maintained. *See* Army Regulation 27–10, *Legal Services: Military Justice*, para. 5–25 (25 Sep. 1986). We do not find that it must be; the fact that a reprimand was issued for a finding of an indecent assault, reflecting past conduct, was simply rebuttal to appellant's portrayal of himself as first-time sexual assailant.

The military judge also stated the Military Rules of Evidence were relaxed for the admission of the CID message. The Military Rules of Evidence did not need to be relaxed here, because the previously admitted defense exhibits, including official letters of commendation and military training, were admissible as (1) officially recorded opinions (Mil.R.Evid. 803(6)), (2) parts of the personnel records of the appellant (R.C.M. 1001(b)), and (3) matter in mitigation (R.C.M. 1001(c)(1)(B)). Further, under our analysis above that part of the CID material was admissible as rebuttal, Mil.R.Evid. 803(6), the Military Rules of Evidence need not have been relaxed for admissibility.

adult woman, outweighed any unfair prejudicial impact. *See United States v. Martin*, 20 M.J. 227, 230 n. 4 (C.M.A.1985) (purpose of presentencing proceeding to present evidence of relative "goodness" or "badness"); *United States v. Shields*, 20 M.J. 174, 176 (C.M.A.1985). We find that the military judge did not abuse his discretion.

Further, we find no fair risk that appellant's approved sentence would have been less severe had the court members not erroneously been provided information that the CID opined that appellant had committed an indecent assault in 1974. *United States v. Sales*, 22 M.J. 305, 309 (C.M.A. 1986).

### III

 Appellant also alleges that the military judge erred by (a) failing to call an Article 39(a) session to request suggested instructions from counsel, and (b) failing to advise the court members that appellant's guilty plea was a mitigating factor. First, any problem in having the request for the instruction and the military judge's decision made in front of the court members was waived by trial defense counsel's failure to request an Article 39(a) hearing. *See* R.C.M. 1005(e). Second, appellant pleaded guilty only after the government had examined its final witness, the victim, on the merits of the case. The change of plea also came following the recantation by appellant's son of his previous testimony asserting his father's innocence of the charge. Rule for Court–Martial 1001(f) provides that "the court-martial may consider ... that a plea of guilty is a mitigating factor." But this instruction is not required when the record, as here, justifies not giving it. *See* Rule for Courts–Martial 1005(e) (this instruction not one required in all cases). Moreover, the military judge must tailor his instructions to the law and the facts. *United States v. McLeskey*, 15 M.J. 565, 566 (A.F.C.M.R.1982), *petition denied*, 16 M.J. 102 (C.M.A.1983). It would have been improper for the military judge

to have instructed the court members that the guilty plea was a mitigating factor when the court members had to decide for themselves how to consider this late change of pleas. They did not need a specific instruction to determine what weight to give the fact of a guilty plea here, to less serious conduct than that charged, where the guilty plea was made only in response to the introduction of overwhelming evidence of guilt.[11]

### IV

 We find appellant's remaining assignments of error waived by (1) failing to object when the military judge took judicial notice of the sexual offender program at the Disciplinary Barracks, and (2) failing to request an instruction requiring that in their sentencing determination the members not rely on any potential mitigating action by the convening authority. *See* R.C.M. 1005(f) (waiver of error on instruction unless plain error); *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A.1986).

### V

 Appellant also contends that the approved punishment was too severe. The facts argue conclusively to the contrary. One Sunday morning the thirteen-year old victim came to appellant's quarters in Germany to go with his fourteen-year old son to worship services. Appellant insisted that she accompany appellant into the quarters to awaken his son. Once in the bedroom area of the quarters, appellant sexually attacked her.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms the sentence.

Senior Judge FELDER and Judge ROBBLEE concur.

---

**11.** Accordingly, we distinguish *United States v. Simpson*, 16 M.J. 506 (A.F.C.M.R.1983), and *United States v. McLeskey*, 15 M.J. at 566, based on factual differences in this case.